**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**


The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 9, 2023

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 9, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>JAMES HINTON,<br><br>                     Petitioner. | No. 98135-3<br><br>En Banc<br><br>Filed: <u>March 9, 2023</u> |

STEPHENS, J.—James Hinton was sentenced to a 37-year standard range adult sentence for a murder and an attempted murder he committed at age 17. His judgment and sentence became final in 2001. In his current personal restraint petition (PRP), Hinton argues that he was less culpable than an adult when he committed those crimes, so his standard range adult sentence is a disproportionate punishment that violates the Eighth Amendment to the United States Constitution.[1] Hinton seeks collateral relief in the form of a resentencing hearing so he can prove that his lesser culpability entitles him to a lesser sentence.

---

[1] Hinton also argues he is entitled to relief under article I, section 14 of Washington's constitution, but he does not provide the necessary analysis under *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986). Accordingly, we decline to reach Hinton's state constitutional claims.

*In re the Personal Restraint of Hinton*, No. 98135-3

The State argues that resentencing is unwarranted because Hinton has an adequate alternative remedy: RCW 9.94A.730. That statute provides that juvenile offenders sentenced to lengthy adult sentences are eligible to petition the Indeterminate Sentence Review Board (ISRB) for release on parole after serving 20 years of their sentence. If a juvenile offender is not released at that first hearing, they are entitled to further parole hearings at least every five years until they are released or they serve the term of their original sentence. And at every parole hearing, these juvenile offenders are entitled to a presumption of release. In this way, RCW 9.94A.730 effectively converts the determinate adult sentences imposed on juvenile offenders like Hinton into indeterminate sentences with release presumed after 20 years. The State therefore argues that RCW 9.94A.730 is an adequate remedy that precludes Hinton's PRP under RAP 16.4(d).

We agree and hold that RCW 9.94A.730 is an adequate remedy that precludes Hinton's PRP because it eliminates the constitutional error that Hinton identifies in his original sentence. We therefore affirm the Court of Appeals and deny Hinton's petition.

*In re the Personal Restraint of Hinton*, No. 98135-3

## FACTS

James Hinton had a difficult childhood. He did not know his father, and his mother struggled with mental illness to the extent that his grandmother became his primary caregiver. Hinton suffered a serious head injury in a car accident when he was 15, which left him in a temporary coma and caused recurring seizures. Hinton dropped out of high school in his freshman year and began to abuse drugs and alcohol. Over the next few years, Hinton was adjudicated guilty of several juvenile offenses, including assault, intimidation with a weapon, and residential burglary.

When he was 17, Hinton killed one person and seriously injured another in a shooting. Hinton was tried as an adult because of the serious violent nature of these crimes, and he was convicted of second degree murder and second degree attempted murder. Because Hinton was tried as an adult, he was sentenced to standard range adult sentences under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW. Hinton's murder conviction carried a standard range of 154-254 months and his attempted murder conviction carried a standard range of 92.25-165 months. Because Hinton committed these crimes with a firearm, each conviction also carried a 60-month firearm enhancement. The SRA provided that these sentences and enhancements were to run consecutively.

3

Balancing Hinton's youth and background against his criminal history and the nature of these offenses, the State asked the sentencing court to impose sentences in the middle of the standard SRA ranges. Hinton countered that, given the 120 months he would serve for the firearm enhancements alone, sentences at the low end of the standard SRA ranges would be more appropriate. But Hinton did not argue that the trial court should impose a lesser sentence because the mitigating qualities of youth made him less culpable than an adult.

The sentencing court generally followed the State's sentencing recommendations, imposing midrange sentences of 204 months for Hinton's murder conviction and 120 months for his attempted murder conviction. With the mandatory firearm enhancements, Hinton's total sentence was 444 months (37 years). Hinton received 18 months' credit for time served pending his trial and sentencing.

In 2016, Hinton filed a CrR 7.8 motion for relief from judgment. The trial court transferred the motion to the Court of Appeals to be considered as a PRP. The Court of Appeals denied Hinton's petition, concluding that Hinton did not make the required showing of actual and substantial prejudice.

Hinton petitioned this court for discretionary review in early 2020. We stayed consideration of Hinton's petition pending our decisions in several other juvenile

*In re the Personal Restraint of Hinton*, No. 98135-3

justice cases, ultimately lifting the stay and accepting Hinton's petition for review in early 2022. We also accepted amicus briefs from Freedom Project Washington and the Washington Association of Prosecuting Attorneys.

ANALYSIS

Hinton argues that the 37-year adult sentence imposed by his original sentencing court violates the Eighth Amendment. Specifically, Hinton claims that his sentencing court committed constitutional error by failing to comply with a new constitutional rule that this court announced in *State v. Houston-Sconiers*[2] and applied retroactively in *In re Personal Restraint of Ali*[3] and *In re Personal Restraint of Domingo-Cornelio*.[4] Hinton argues that he is entitled to collateral relief in the form of resentencing because that is "the only remedy which can redress the constitutional harm [he] has suffered" due to "the trial court's dual failure to meaningfully consider youth and to appreciate its complete discretion." Second Suppl. Br. of Pet'r at 21.

Hinton's argument is unpersuasive for two reasons. First, Hinton misapprehends our decisions in *Ali* and *Domingo-Cornelio*. Those cases recognize that *Houston-Sconiers*'s substantive rule—and only its substantive rule—applies

---

[2] 188 Wn.2d 1, 391 P.3d 409 (2017).
[3] 196 Wn.2d 220, 474 P.3d 507 (2020).
[4] 196 Wn.2d 255, 474 P.3d 524 (2020).

retroactively on collateral review. Yet Hinton focuses much of his argument on his sentencing court's failure to adhere to *Houston-Sconiers*'s procedural rule, which provides no basis for relief because procedural rules do not apply retroactively.

Second, even if the sentencing court violated *Houston-Sconiers*'s substantive rule, Hinton is not entitled to relief via PRP because he has an adequate alternative remedy. RCW 9.94A.730 has effectively converted Hinton's 37-year adult sentence into a juvenile indeterminate sentence with a minimum term of 20 years and a presumption of release at every parole hearing. RCW 9.94A.730 therefore precludes Hinton's PRP because it remedies the constitutional error he identifies in his original 37-year adult sentence. RAP 16.4(d). Accordingly, we affirm the Court of Appeals and deny Hinton's petition.

I.     Relief via PRP Is Not Available Where the Petitioner Has an Adequate Alternative Remedy for the Error They Identify

Hinton raises a collateral challenge to his sentence through a PRP. Granting a PRP is an extraordinary form of relief, so we require the petitioner to "meet a high standard before this court will disturb an otherwise settled judgment." *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810-12, 792 P.2d 506 (1990)). "Among other things, PRP who have had prior opportunity for judicial review must show that they were actually and substantially prejudiced by constitutional error or that their trials

6

suffered from a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice." *Id.* (citing *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007); *In re Pers. Restraint of Isadore,* 151 Wn.2d 294, 299, 88 P.3d 390 (2004); *Cook,* 114 Wn.2d at 810-12, 792 P.2d 506). "'These threshold requirements are justified by the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review.'" *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 315, 440 P.3d 978 (2019) (quoting *Isadore*, 151 Wn.2d at 298).

Another limitation on the availability of collateral relief is that "appellate court[s] will only grant relief by a PRP if other remedies which may be available to the petitioner are inadequate under the circumstances." RAP 16.4(d). The State argues that RCW 9.94A.730 provides an adequate alternative remedy, so this court cannot grant Hinton relief through his PRP. To determine whether an alternative remedy is adequate within the meaning of RAP 16.4(d), we ask whether that remedy can mitigate or eliminate the error identified by the petitioner. *See Ali*, 196 Wn.2d at 245-46.

Here, Hinton asserts a constitutional error. He claims that the 37-year adult sentence imposed by his original sentencing court violates the Eighth Amendment

7

*In re the Personal Restraint of Hinton*, No. 98135-3

because that court did not comply with the constitutional rule announced in *Houston-Sconiers* and applied retroactively in *Ali* and *Domingo-Cornelio*. To establish whether RCW 9.94A.730 provides Hinton with an adequate remedy, we must first identify the constitutional rule from *Houston-Sconiers* that applies retroactively to Hinton's sentence.

II.      *Houston-Sconiers* Announced Substantive and Procedural Rules To Protect Juvenile Offenders from Harsh Adult Sentences That Would Be Disproportionate Punishments in Violation of the Eighth Amendment

The Eighth Amendment prohibits the federal and state governments from imposing cruel and unusual punishments. U.S. CONST. amend. VIII; *Robinson v. California*, 370 U.S. 660, 667, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962) (incorporating the Eighth Amendment against the states). Throughout most of the Eighth Amendment's history, the United States Supreme Court interpreted it to prohibit only barbaric, inhumane punishments. *See, e.g.*, *Coker v. Georgia*, 433 U.S. 584, 592, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977). But over time, the Court occasionally suggested that the Eighth Amendment also prohibits punishments that are grossly disproportionate to the crime committed. *Id.* (citing *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972); *Robinson*, 370 U.S. 660; *Trop v. Dulles*, 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) (plurality opinion); *Weems v. United States*, 217 U.S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910)). By the 1970s, "the Court firmly embraced the holdings and dicta from" those cited cases and

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

recognized "that the Eighth Amendment bars not only those punishments that are 'barbaric' but also those that are 'excessive' in relation to the crime committed." *Id.* Today, it is well established that "the Eighth Amendment contains a 'narrow proportionality principle,' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *Graham v. Florida*, 560 U.S. 48, 59-60, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (quoting *Harmelin v. Michigan,* 501 U.S. 957, 997, 1000-01, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (controlling opinion of Kennedy, J., concurring in part and concurring in judgment)).

In *Graham*, the United States Supreme Court noted that its "cases addressing the proportionality of sentences fall within two general classifications." 560 U.S. at 59. "In the first classification the Court considers all of the circumstances of the case to determine whether the sentence is unconstitutionally excessive." *Id.* "The controlling opinion in *Harmelin* explained its approach for determining whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime":

> A court must begin by comparing the gravity of the offense and the severity of the sentence. "[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality" the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis "validate[s]

*In re the Personal Restraint of Hinton*, No. 98135-3

> an initial judgment that [the] sentence is grossly disproportionate," the sentence is cruel and unusual.

*Id.* at 60 (alterations in original) (citation omitted) (quoting *Harmelin*, 501 U.S. at 1005 (controlling opinion of Kennedy, J., concurring in part and concurring in judgment)). "The second classification of cases has used categorical rules to define Eighth Amendment standards," deciding that particular punishments are beyond the power of the state to impose on particular categories of defendants. *Id.*

A few years after *Graham*, the United States Supreme Court determined that "the confluence of these two lines of precedent leads to the conclusion that mandatory life-without-parole sentences for juveniles violate the Eighth Amendment." *Miller v. Alabama*, 567 U.S. 460, 470, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Drawing from the first line of precedent, the *Miller* Court explained that the Eighth Amendment "demand[s] individualized sentencing when imposing the death penalty" and analogous sentences, so "that capital defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty [and analogous sentences are] reserved only for the most culpable defendants committing the most serious offenses." *Id.* at 475-76. Relying on the second line of precedent, the *Miller* Court recognized that juvenile offenders generally "have diminished culpability and greater prospects for reform," making most juvenile offenders "'less deserving of the most severe punishments.'"

10

*In re the Personal Restraint of Hinton*, No. 98135-3

*Id.* at 471 (quoting *Graham*, 560 U.S. at 68). Combining these principles, the *Miller* Court concluded that "[b]y removing youth from the balance—by subjecting a juvenile to the same life-without-parole sentence applicable to an adult—these [mandatory sentencing] laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id.* at 474. This conclusion encapsulates the core constitutional problem posed by sentencing juvenile offenders to sentences designed for adults: few juvenile offenders are as culpable as adult offenders, so the harshest sentences designed for adults will often be grossly disproportionate punishments for juveniles.

Our decision in *Houston-Sconiers* follows from this United States Supreme Court precedent. There, we extended *Miller*'s reasoning to apply to adult sentences other than life without parole when imposed on juvenile offenders. *Houston-Sconiers*, 188 Wn.2d at 21. As *Miller* had held in the context of mandatory life without parole, *Houston-Sconiers* held "that sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant . . . and must have discretion to impose any sentence below the otherwise applicable SRA range and/or sentence enhancements." *Id.* *Houston-Sconiers* reiterated the core constitutional problem identified in *Miller*: "'a sentencing rule permissible for adults may not be so for children,' [so] certain

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sentences that are routinely imposed on adults [may be] disproportionately too harsh when applied to youth." *Id.* at 19 n.4 (citation omitted) (quoting *Miller*, 567 U.S. at 481).

A. *Houston-Sconiers* Announced a Substantive Constitutional Rule and a Procedural Constitutional Rule

In *Ali* and *Domingo-Cornelio*, this court explained that "*Houston-Sconiers* announced a substantive constitutional rule." *Domingo-Cornelio*, 196 Wn.2d at 266 (citing *Ali*, 196 Wn.2d at 237). "'Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose' and include 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Ali*, 196 Wn.2d at 237 (alteration in original) (internal quotation marks omitted) (quoting *Montgomery v. Louisiana*, 577 U.S. 190, 201, 198, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)). "*Houston-Sconiers* established a category of punishments that are prohibited: adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability." *Id.* Therefore, *Houston-Sconiers* established the substantive rule that courts may not impose "certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment." *Id.* at 239.

*In re the Personal Restraint of Hinton*, No. 98135-3

*Houston-Sconiers* "also established a mechanism necessary to effectuate that substantive rule: sentencing courts must consider the mitigating qualities of youth and have discretion to impose sentences below what the SRA mandates." *Id.* at 237. That mechanism is a procedural rule, "'designed to enhance the accuracy of a conviction or sentence by regulating the manner of determining the defendant's culpability.'" *Id.* (emphasis and internal quotation marks omitted) (quoting *Montgomery*, 577 U.S. at 201). "The discretion and consideration that *Houston-Sconiers* requires are necessary to effectuate the substantive rule that certain punishments routinely imposed on adults are unconstitutional as applied to youth." *Id.* at 238.

B. *Houston-Sconiers*'s Substantive Rule Applies Retroactively on Collateral Review, but Its Procedural Rule Does Not

As this court in *Ali* recognized, "Washington courts follow the test laid out in *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989), to determine whether a rule applies retroactively." 196 Wn.2d at 236 (citing *In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 623-26, 380 P.3d 504 (2016)). Under *Teague*, a new rule applies retroactively on collateral review only if it is a new substantive rule of constitutional law. *Edwards v. Vannoy*, 593 U.S. __, 141 S. Ct. 1547, 1560, 209 L. Ed. 2d 651 (2021). "New procedural rules do not apply retroactively on . . . collateral review." *Id.* Even when a new substantive rule is accompanied by a new

13

*In re the Personal Restraint of Hinton*, No. 98135-3

procedural rule that "gives effect to [that] substantive holding," only the new substantive rule is given retroactive effect. *Montgomery* 577 U.S. at 210; *see also id.* at 212 ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them" in accordance with *Miller*'s procedural rules.).[5]

Our reasoning in *Ali* and *Domingo-Cornelio* mirrors the United States Supreme Court's reasoning in *Montgomery*, which gave retroactive effect to *Miller*'s substantive rule. "*Miller* and *Montgomery* compel the conclusion that *Houston-Sconiers* is a new substantive constitutional rule" because the "same constitutional principles form the foundation of *Houston-Sconiers*." *Ali*, 196 Wn.2d at 238-39.

Like *Montgomery*, *Ali* rejected the argument that a substantive rule should be conflated with its attendant procedural requirements. *Compare Montgomery*, 577 U.S. at 210 ("[P]rocedural requirements do not, of course, transform substantive rules into procedural ones."), *with Ali*, 196 Wn.2d at 240 ("Like in *Miller*, *Houston-Sconiers* announced a procedural component as a mechanism to protect the substantive rule," but "[t]his does not transform *Houston-Sconiers*'s substantive rule

---

[5] The dissent appears to reject outright the retroactivity principles this court has long followed, suggesting that RCW 10.73.100(6) requires the retroactive application of procedural rules. Dissent at 4 & n.4. As recently as in *Ali*, this court has adhered to *Teague* retroactivity standards, and no one asks us to change course here. *See Ali*, 196 Wn.2d at 236; *see also Colbert*, 186 Wn.2d at 623 ("Generally, RCW 10.73.100(6) is interpreted consistent with the federal retroactivity analysis under *Teague*.").

14

into a procedural rule."). Recognizing that only *Miller*'s substantive rule could be retroactive, *Montgomery* did not give retroactive effect to *Miller*'s procedural rule, which would have required all juveniles sentenced to mandatory life without parole to be resentenced. *Montgomery*, 577 U.S. at 212. Instead, *Montgomery* explained that other adequate remedies may exist: "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." *Id.* (citing WYO. STAT. ANN. § 6-10-301(c) (2013) (making juvenile homicide offenders eligible for parole after 25 years)). Just as *Montgomery* gave only *Miller*'s substantive rule retroactive effect, *Ali* and *Domingo-Cornelio* gave only *Houston-Sconiers*'s substantive rule retroactive effect. Therefore, the rule announced by *Houston-Sconiers* that applies retroactively to Hinton's case is the substantive rule that courts may not impose "certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment." *Ali*, 196 Wn.2d at at 239.

Hinton claims that he "possess[ed] such diminished culpability that the [37-year] adult standard SRA ranges and enhancements" imposed on him as a juvenile "would be disproportionate punishment." *Id.* He seeks resentencing in order to present that argument to a sentencing court for the first time. However, the State argues that resentencing is not warranted because RCW 9.94A.730 has already

15

*In re the Personal Restraint of Hinton*, No. 98135-3

solved any constitutional problem that might exist with Hinton's original sentence by "convert[ing] his 37-year fixed [adult standard range] sentence to a 20[-] to 37-year indeterminate sentence" created for juvenile offenders in Hinton's position. Suppl. Br. re *Ali & Domingo-Cornelio* at 3. It therefore argues that Hinton has an adequate remedy that precludes relief through a PRP. We agree with the State.

III.    RCW 9.94A.730 Provides an Adequate Remedy for the Violation of *Houston-Sconiers*'s Substantive Rule That Hinton Alleges Here

Soon after the United States Supreme Court announced its decision in *Miller*, Washington's legislature enacted "*Miller*-fix" statutes directing that all juvenile offenders who had been convicted of aggravated first degree murder and sentenced to mandatory life without parole be resentenced in light of the "mitigating factors that account for the diminished culpability of youth as provided in *Miller*." RCW 10.95.035, .030(3)(b). These *Miller*-fix statutes direct that such juvenile offenders be resentenced to indeterminate sentences with "a minimum term of total confinement of no less than twenty-five years." RCW 10.95.030(3)(a)(ii). After serving their new minimum term, a juvenile offender receives a parole hearing before the ISRB. RCW 10.95.030(3)(f). At that hearing, the juvenile offender is entitled to a presumption of release. *Id.* If the juvenile offender is not paroled at their first hearing, they are entitled to another parole hearing after five years or less. *Id.*

16

*In re the Personal Restraint of Hinton*, No. 98135-3

In the same bill that created these *Miller*-fix statutes, the legislature also enacted RCW 9.94A.730. LAWS OF 2014, ch. 130, § 10. This statute does not apply to juvenile offenders serving the mandatory life without parole sentences at issue in *Miller*. Instead, it applies to "any person convicted of one or more crimes committed prior to the person's eighteenth birthday" who have received adult sentences totaling more than "twenty years of total confinement." RCW 9.94A.730(1). By enacting RCW 9.94A.730, Washington's legislature effectively anticipated this court's holding in *Houston-Sconiers* by recognizing that juvenile offenders who received harsh adult sentences other than life without parole should also be provided relief from those potentially unconstitutional sentences.

Like the *Miller*-fix statutes, RCW 9.94A.730 provides indeterminate sentences for the juvenile offenders to whom it applies. *Compare* RCW 10.95.030(3)(a)-(i), *with* RCW 9.94A.730(1)-(7). Juvenile offenders subject to RCW 9.94A.730 are entitled to a parole hearing with a presumption of release before the ISRB, just as juvenile offenders are under the *Miller*-fix statutes. RCW 9.94A.730(3); RCW 10.95.030(3)(f). Similarly, "[a]n offender whose petition for release is denied may file a new petition for release five years from the date of denial or at an earlier date as may be set by the [ISRB]." RCW 9.94A.730(6).

17

The difference between the *Miller*-fix statutes and RCW 9.94A.730 lies in how each sets the minimum and maximum terms for the indeterminate sentences to be served by juvenile offenders. The *Miller*-fix statutes provide that a juvenile offender originally sentenced to mandatory life without parole be resentenced to a minimum term of 25 years or more and a maximum term of life. RCW 10.95.030(3)(ii).[6] In contrast, RCW 9.94A.730(1) automatically sets a juvenile offender's minimum term at 20 years by providing for their first parole hearing after they have served 20 years of their sentence. And rather than setting the juvenile offender's maximum term at life, RCW 9.94A.730(5) sets their maximum term at the length of their original sentence. So unlike the *Miller*-fix statutes, RCW 9.94A.730's remedy applies automatically to all qualifying juvenile offenders originally sentenced to lengthy determinate adult sentences without the need for a resentencing hearing.

Hinton claims that his sentencing court violated *Houston-Sconiers*'s substantive rule, which "established a category of punishments that are prohibited: adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability." *Ali*, 196 Wn.2d at

---

[6] We have held that sentencing courts may not reimpose a minimum term of life without parole on juvenile offenders resentenced under the *Miller*-fix statutes. *State v. Bassett*, 192 Wn.2d 67, 91, 428 P.3d 343 (2018).

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

237. Hinton is correct that his original 37-year standard range adult sentence falls within the category of punishments that *Houston-Sconiers* prohibited for juvenile offenders who possess diminished culpability. But Hinton does not persuasively explain why RCW 9.94A.730 is an inadequate remedy when that statute provides him with relief in the form of an indeterminate sentence with a minimum term of 20 years and a presumption of release.

Hinton relies on this court's decision in *Ali*. There, we held that RCW 9.94A.730 was not an adequate remedy where the juvenile offender at issue had been originally given a 26-year adult sentence in violation of *Houston-Sconiers*. *Ali*, 196 Wn.2d at 246. We reasoned that requiring a juvenile offender to serve the majority of an unconstitutional sentence before receiving a parole hearing does not adequately remedy a violation of *Houston-Sconiers*'s substantive rule. *Id.* However, that reasoning was premised on this court's limited understanding of the remedy provided by RCW 9.94A.730. As explained in *In re Personal Restraint of Carrasco*, *Ali* made no broad pronouncement suggesting that .730 is inadequate to remedy all *Houston-Sconiers* violations, and instead "confirmed that .730 will provide an adequate remedy for a *Houston-Sconiers* violation in cases . . . where the petitioner

19

*In re the Personal Restraint of Hinton*, No. 98135-3

is serving an exceptionally lengthy sentence." *In re Pers. Restraint of Carrasco*, No. 100073-1, slip op. at 12.[7]

In *Ali* and *Domingo-Cornelio*, the court was not presented with the argument, and therefore did not consider, that RCW 9.94A.730 created an indeterminate sentencing scheme for juvenile offenders originally sentenced to lengthy adult sentences. Instead, all involved believed the remedy in RCW 9.94A.730 was limited to the opportunity for parole after 20 years. *See Ali*, 196 Wn.2d at 245 ("RCW 9.94A.730 permits a person convicted of crimes committed when they were under 18 years old to petition for early release after serving 20 years in confinement.").

But now, the State has brought to our attention the full effect of the remedy the legislature has provided in RCW 9.94A.730. Beyond providing an opportunity for parole, RCW 9.94A.730 has effectively reformed the sentences of juvenile offenders like Hinton by providing them with indeterminate sentences with a minimum term of 20 years and a presumption of release at each parole hearing. In so doing, RCW 9.94A.730 has created a new sentence that the legislature has

---

[7] Of course, "RCW 9.94A.730 cannot provide an adequate remedy under all circumstances" where a juvenile offender has been sentenced to an unconstitutionally disproportionate punishment. *Ali*, 196 Wn.2d at 246. If a juvenile offender is sentenced to 20 years or fewer, for example, RCW 9.94A.730 provides "no relief at all." *Domingo-Cornelio*, 196 Wn.2d at 269 n.8. We also note that the legislature has excluded juvenile offenders subsequently convicted of crimes as adults from RCW 9.94A.730's remedy, and we express no opinion on the constitutionality of that legislative determination today.

20

designed expressly and exclusively for juvenile offenders, rather than for adults. This understanding of RCW 9.94A.730 was not presented in *Ali*, and we are persuaded that it addresses the constitutional problem that Hinton has identified.

We hold that RCW 9.94A.730 provides Hinton with an adequate remedy for his sentencing court's alleged violation of *Houston-Sconiers*'s substantive rule. That substantive rule applies to "adult standard SRA ranges and enhancements [that] would be disproportionate punishment" for juvenile offenders with lesser culpability than adult offenders. *Id*. at 239. By replacing qualifying juvenile offenders' adult standard range sentences with indeterminate sentences specifically designed for juveniles, RCW 9.94A.730 remedies any constitutional violation, making relief via PRP inappropriate.

CONCLUSION

This court may grant a PRP only when the petitioner has no other adequate remedy for the constitutional error they identify. RAP 16.4(d). By effectively converting Hinton's original standard range adult sentence into an indeterminate sentence for juvenile offenders, RCW 9.94A.730 remedies the constitutional error Hinton alleges. Because *Houston-Sconiers*'s substantive rule prohibits "adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished culpability," *Ali*, 196 Wn.2d at 237, the fact

21

*In re the Personal Restraint of Hinton*, No. 98135-3

that Hinton is no longer serving an adult standard range sentence demonstrates that

RCW 9.94A.730 is an adequate remedy for a violation of that rule.  Accordingly, we

deny Hinton's PRP.

_____
Stephens, J.

WE CONCUR:

_____  _____

_____  _____
Johnson, J.

_____  _____
Madsen, J.

_____  _____
Owens, J.       Maxa, J.P.T.

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

No. 98135-3

WHITENER, J. (dissenting)— James Hinton, at the age of 17, was sentenced to 37 years, an adult standard range sentence under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, for murder and attempted murder. Hinton contends that he is entitled to resentencing because the sentencing court did not meaningfully consider his youth as a mitigating factor and failed to understand that it had discretion to depart from the SRA's mandatory sentencing guidelines because of his juvenile status (the dual mandate of *State v. Houston-Sconiers*[1]).

In *In re Personal Restraint of Ali*[2] and *In re Personal Restraint of Domingo-Cornelio*,[3] this court held that *Houston-Sconiers* is a significant change in the law that applies retroactively. In doing so, we held that the dual mandates, the discretion to depart from the SRA and the directive that trial courts must consider the youth of the defendant at sentencing, "are necessary to effectuate the substantive rule that certain punishments routinely imposed on adults are unconstitutional as applied to youth." *Ali*, 196 Wn.2d at 238. We then applied the dual mandates retroactively to

---

[1] 188 Wn.2d 1, 391 P.3d 409 (2017)

[2] 196 Wn.2d 220, 474 P.3d 507 (2020).

[3] 196 Wn.2d 255, 474 P.3d 524 (2020).

1

determine whether *Ali* and *Domingo-Cornelio* had constitutionally adequate sentencing hearings, and we held that because the trial court judges did not comply with the dual mandates, and there were no other adequate remedies, that *Ali* and *Domingo-Cornelio* needed to be resentenced. *See id*. at 244-46; *Domingo-Cornelio*, 196 Wn.2d at 267-69. In other words, to effectuate the substantive rule of *Houston-Sconiers*, this court announced two procedural rules characterized as the dual mandates.

Today the majority incorrectly holds that the decisions in *Ali* and *Domingo-Cornelio* "recognize that *Houston-Sconiers*'s substantive rule—and only its substantive rule—applies retroactively on collateral review." Majority at 5. In addition, the majority concludes that RCW 9.94A.730, a forward looking remedy that requires a defendant serve 20 years before becoming eligible for parole, is an adequate remedy for the sentencing court's failure to consider youth at the time of sentencing and to appreciate the discretion to depart from the SRA. I disagree.

I would reaffirm that the dual mandates in *Houston-Sconiers* are retroactive. I would consider Hinton's personal restraint petition (PRP) in its entirety and find that *Houston-Sconiers* is material to Hinton's case. For the reasons discussed below, and consistent with my dissent in *In re Personal Restraint of Carrasco*, No. 100073-1 (Wash. Mar. 9, 2023) (Whitener, J., dissenting), I would adopt a per se prejudice standard for the limited purpose of considering PRPs, like Hinton's, which are based

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

on the retroactive application of *Houston-Sconiers* and remand Hinton's case for resentencing. Further, I would hold that RCW 9.94A.730, which allows for parole after serving 20 years if certain forward looking conditions are met, is not an adequate remedy for the failure to consider youth and appreciate discretion at sentencing. Accordingly, I respectfully dissent.

ANALYSIS

I.    *Houston-Sconiers* announced a substantive rule and the procedural mechanism to enforce that rule, both of which are retroactive under *Ali* and *Domingo-Cornelio*

The majority concludes that the only rule from *Houston-Sconiers* that is retroactive on collateral review "is the substantive rule that courts may not impose 'certain adult sentences . . . on juveniles who possess such diminished culpability that the adult standard SRA ranges and enhancements would be disproportionate punishment.'" Majority at 15 (alteration in original) (quoting *Ali*, 196 Wn.2d at 239). Consistent with my dissent in *Carrasco*, I disagree. *See Carrasco*, No. 100073-1, slip op. at 5-10 (Whitener, J., dissenting).

We framed both *Ali* and *Domingo-Cornelio* as analyzing whether the dual mandates of *Houston-Sconiers* are retroactive. We ultimately concluded that they are, and then we analyzed prejudice as whether the dual mandates had been satisfied at the trial court. Finding they had not, we remanded for resentencing because the trial courts had *not* complied with the dual mandates. The majority now overrules

3

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

those cases without any explanation as to how these two cases are incorrect and

harmful as required under stare decisis.

First, our state statutory exception to the time bar treats new procedural rules

the same as it treats new substantive rules. RCW 10.73.100(6) (The time bar does

not apply when "[t]here has been a significant change in the law, *whether substantive*

*or procedural*, which is material to the conviction, sentence . . . ." (emphasis added)).

Thus, the majority's distinction lacks statutory language to support it.

Second, this court has already held that the dual mandates are "*necessary to*

*effectuate*" the substantive rule that *Houston-Sconiers* announced and therefore

those procedural dual mandates do apply retroactively.[4] *Ali*, 196 Wn.2d at 238

---

[4] The majority holds that procedural rules can never be applied retroactively and that because the dual mandates are procedural in nature, they cannot be applied retroactively. Majority at 13 (citing *Edwards v. Vannoy*, 593 U.S. __, 141 S. Ct. 1547, 1560, 209 L. Ed. 2d 651 (2021)). This is an inaccurate characterization of the standards regarding principles of retroactivity. It is true that under federal habeas precedent applicable to federal constitutional law, "a new [constitutional] rule applies retroactively on collateral review only if it is a new substantive rule of constitutional law or a watershed rule of criminal procedure." *Ali,* 196 Wn.2d at 236 (citing *Montgomery v. Louisiana*, 577 U.S. 190, 198-99, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016)). As noted above, the language of our state statute on the retroactivity of new rules "whether substantive or procedural," RCW 10.73.100(6), is different. Further, under state law, if a substantive constitutional rule coincides with a crucial procedural mechanism that implements that substantive rule, then that procedural mechanism must also apply retroactively. *Ali,* 196 Wn.2d at 240 ("Like in *Miller* [*v. Alabama*], [567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012),] *Houston-Sconiers* announced a procedural component as a mechanism to protect the substantive rule."); *see Montgomery,* 577 U.S. at 210 ("There are instances in which a substantive change in the law must be attended by a procedure that enables a prisoner to show that he falls within the category of persons whom the law may no longer punish."). A majority of our court has said precisely this: "The substantive protection of proportionate punishment *ceases to exist* without the mechanism to determine whether the juvenile belongs in the class of culpability that would allow adult sentences versus the more likely outcome of a sentence that reflects the juvenile's immaturity." *Ali,* 196 Wn.2d at 240.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(emphasis added). *The Ali* court explained that the dual mandates are the crucial mechanisms that trial courts must use in securing this constitutional right:

> Without the context of a defendant's youthfulness and the discretion to impose something less than what the SRA mandates, sentencing courts cannot protect juveniles' Eighth Amendment right to be free from unconstitutionally disproportionate punishment. The discretion and consideration that *Houston-Sconiers* requires are necessary to effectuate the substantive rule that certain punishments routinely imposed on adults are unconstitutional as applied to youth.

*Id*; U.S. CONST. amend. VIII. Our court stressed this point further in *Ali*'s sister case, *Domingo-Cornelio*. 196 Wn.2d at 266 (the dual mandates are "the mechanism necessary to effectuate th[e] substantive rule").

Third, when we analyzed the violations at issue in *Ali* and *Domingo-Cornelio*, the analysis does not concern whether a categorically prohibited disproportionate adult standard SRA range sentence was imposed on the juvenile offender with diminished culpability. Instead, we analyzed *whether the trial court judge complied with the dual mandates of* <u>Houston-Sconiers</u> because there is no way to know if the sentence is unconstitutionally disproportionate unless the court followed the dual mandates.

In *Ali,* we reasoned,

> Ali's sentencing comported with only one of the two constitutional requirements we announced in *Houston-Sconiers*. The sentencing judge considered the mitigating factors of Ali's youth and arguments for an exceptional sentence, but because she did not have the discretion to impose any sentence below the standard SRA range and mandatory enhancements, she sentenced according to the SRA's

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

mandates for adult sentencing. Based on the record, it appears that more likely than not, the judge would have imposed a lower sentence had she understood that the Eighth Amendment requires absolute discretion to impose any sentence below the standard range based on youthful diminished culpability. Since *Houston-Sconiers* applies retroactively, Ali was actually and substantially prejudiced by the sentencing court's (understandable) error.

196 Wn.2d at 244-45.

Further, in *Domingo-Cornelio*, we concluded that "a petitioner establishes actual and substantial prejudice when a sentencing court fails to consider mitigating factors relating to the youthfulness of a juvenile tried as an adult and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration." 196 Wn.2d at 268. We went on to analyze whether the trial court judge had complied with the dual mandates, ultimately concluding that "[m]ore likely than not, Domingo-Cornelio would have received a lesser sentence had the court complied with the dual mandates of *Houston-Sconiers*." *Id.* at 268-69. We remanded for resentencing because of this failure to follow the dual mandates. *Id.* at 269.

The dual mandates are retroactive on collateral attack, otherwise, there would be no reason for this court to mention the dual mandates in reference to the trial court's actions, much less decide the case on those grounds.

These are two recent, binding decisions that the majority now ignores in its attempt to limit the application of *Houston-Sconiers*. In fact, the majority takes a

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

similar approach to that of the *dissent* in *Ali.* 196 Wn.2d at 247 (Johnson, J., dissenting) ("I disagree with the majority's conclusion that our cases establish a substantive rule of constitutional interpretation requiring retroactive application— though I agree our cases can be read to establish a procedural factor requiring sentencing judges to consider general qualities of youth in considering the discretionary sentencing decision."). But our court is bound to follow a majority opinion unless that opinion has been shown to be incorrect and harmful—an analysis the majority fails to perform. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016) ("In order to effectuate the purposes of stare decisis, this court will reject its prior holdings only upon 'a clear showing that an established rule is incorrect and harmful.'" (quoting *In re Rights to Waters of Stranger Creek*, 77 Wn.2d 649, 653, 466 P.2d 508 (1970))).

Further, the majority in *In re Personal Restraint of Williams* agrees that the dual mandates *are* retroactive, holding that "any application of *Houston-Sconiers*' procedural elements to an indeterminate sentence must be tied to the substantive rule prohibiting adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles who possess diminished capacity." *In re Pers. Restraint of Williams*, 200 Wn.2d 622, 631, 520 P.3d 933 (2022). Accordingly, *Williams* recognizes the retroactivity of the dual mandates so long as the issue is

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

whether the sentence imposed was disproportionate punishment for juveniles who possess diminished capacity, as is the issue here.

*Ali* and *Domingo-Cornelio* are still controlling precedent and both of those decisions held that the dual mandates apply retroactively. Thus, the majority's distinction between "substantive" retroactivity and "procedural" nonretroactivity also lacks case law to support it.

Because I would reaffirm the holding that the dual mandates of *Houston-Sconiers* are retroactive, I consider Hinton's PRP in its entirety.

II. Hinton's petition is not time barred because *Houston-Sconiers* is a significant change in the law that applies retroactively and is material to Hinton's case

Because Hinton's PRP was filed approximately 18 years after his conviction became final, he must establish that his petition is not subject to the one-year time bar for collateral challenges under RCW 10.73.090. As discussed above, "[u]nder RCW 10.73.100(6), the one year time limit to file a PRP does not apply when a petition is based on a significant change in the law, which is material to the conviction or sentence, and sufficient reasons exist to require retroactive application of the changed legal standard." *Ali*, 196 Wn.2d at 233. Hinton asserts that his PRP may be considered under RCW 10.73.100(6) because our opinion in *Houston-Sconiers* is a significant change in the law that applies retroactively and is material to his case. I agree.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

As held in *Ali* and *Domingo-Cornelio*, and discussed in the previous part, the dual mandates in *Houston-Sconiers* are a significant change in the law that applies retroactively. Therefore, at issue is whether *Houston-Sconiers* is material to Hinton's sentence. I would hold that it is material.

The majority does not analyze materiality and instead concludes Hinton's PRP must be denied because Hinton has "an adequate remedy that precludes Hinton's personal restraint petition because it eliminates the constitutional error that Hinton identifies in his original sentence." Majority at 2. The majority's reasoning relies on its determination that RCW 9.94A.730 effectively converts Hinton's 37-year determinate sentence into an indeterminate sentence with a 20-year minimum and, therefore, any Eighth Amendment violation is remedied. Majority at 2, 19-20. However, whether RCW 9.94A.730 converts previously imposed determinate sentences into indeterminate sentences with a mandatory minimum term of 20 years does not preclude the applicability of the Eighth Amendment analysis in *Houston-Sconiers*.

To ensure a juvenile offender's Eighth Amendment rights are not violated, we have held that it is critical for sentencing courts "to exercise . . . discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line." *Houston-Sconiers*, 188 Wn.2d at 20. Our reasoning was based on *Miller*'s holding that criminal procedure laws—namely, sentencing—must

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

consider a defendant's youthfulness before imposing the harshest punishment permissible for juvenile offenders. *Id*. at 9, 20; *see Miller v. Alabama*, 567 U.S. 460, 473-74, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (age of defendant is relevant to Eighth Amendment protections, and courts must consider youth and have discretion to depart from mandatory punishments before imposing "harshest prison sentence"). Certainly, *Miller* categorically prohibited only mandatory life without parole (LWOP) sentences for juvenile offenders. 567 U.S. at 479. However, we have recognized that *Miller*'s fundamental reasoning is applicable in circumstances that do not involve only the most severe punishments that can be imposed on juvenile offenders. *Houston-Sconiers*, 188 Wn.2d at 20. Nor could it be. The Eighth Amendment bans imposition of a sentence that is grossly disproportionate to the offender's crime such that it constitutes cruel and unusual punishment. U.S. CONST. amend. VIII; *see Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983) ("The Eighth Amendment . . . prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."). "What constitutes a cruel and unusual punishment has not been exactly decided," and the Supreme Court has left open the possibility that a sentence for a term of years—as opposed to a life sentence or the death penalty—may be grossly disproportionate depending on the circumstances of the case. *Weems v. United States*, 217 U.S. 349, 368, 30 S. Ct. 544, 54 L. Ed. 793 (1910); *see Graham v. Florida*, 560 U.S. 48, 60,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010);[5] *Solem*, 463 U.S. at 287-90 (discussing circumstances where term of imprisonment, even relatively short or intermediate in length, could be grossly disproportionate to crime).

The effect of RCW 9.94A.730 is inarguably relevant to our consideration of whether Hinton's PRP should be dismissed pursuant to RAP 16.4(d), discussed further in Part IV, *infra*. It does not, however, bring Hinton's case outside the scope of *Houston-Sconiers* or *Miller*, both of which compel us to recognize that juvenile offenders deserve special protections at the time they are sentenced in adult court. The fact remains that Hinton committed his crimes as a juvenile and he was sentenced according to mandatory terms prescribed by the SRA. *Domingo-Cornelio*, 196 Wn.2d at 265 ("The change in the law [in *Houston-Sconiers*] is material to adult standard range sentences imposed for crimes the defendant committed as a child."); *accord Ali*, 196 Wn.2d at 234-35. The fact also remains that the sentencing court *could have* sentenced Hinton to less than 20 years had it complied with the dual mandate of *Houston-Sconiers* and determined that his youth was sufficiently

---

[5] The Supreme Court explained that "[a] court must begin by comparing the gravity of the offense and the severity of the sentence. '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Graham*, 560 U.S. at 60 (most alterations in original) (citation omitted) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment).

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

mitigating to warrant an exceptional downward sentence.[6] Had the sentencing court

done so, Hinton would not have been subject to the authority of the Indeterminate

Sentence Review Board (ISRB) under RCW 9.94A.730.

We cannot say precisely whether Hinton's punishment would have been

different if the sentencing court had the benefit of *Houston-Sconiers* at the time of

sentencing. It is this uncertainty that brings Hinton's case squarely within the

purview of *Houston-Sconiers*. *See Domingo-Cornelio*, 196 Wn.2d at 268 ("Unless

the court meaningfully considers youth and knows it has absolute discretion to

impose a lower sentence, we cannot be certain that an adult standard range was

imposed appropriately on a juvenile under *Houston-Sconiers*."). Accordingly, I

would hold that Hinton has shown that his PRP satisfies the exception to the one-

year time bar under RCW 10.73.100(6), and we may therefore consider the merits

of his PRP in its entirety.

III.    Hinton has established prejudice

      A.    The sentencing court failed to comply with the dual mandate of
            *Houston-Sconiers*

The State does not dispute in Hinton's case that the sentencing court failed to

meaningfully consider youth as a mitigating factor or understand its absolute

---

[6] I acknowledge that the mere possibility of a lesser sentence is insufficient under our actual and substantial prejudice standard to justify Hinton's request for resentencing. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 317, 440 P.3d 978 (2019). Whether Hinton is likely to succeed in establishing actual and substantial prejudice, however, has no bearing on this threshold inquiry of materiality.

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discretion to depart from the standard range sentence or the mandatory consecutive sentencing schemes. *See* RCW 9.94A.535 (exceptional sentences include sentences that depart from standard ranges and also "whether sentences are to be served consecutively or concurrently"). Although not in dispute, the shortcomings of Hinton's sentencing hearing merit brief discussion because they bear directly on whether Hinton can establish prejudice.

The dual mandate of *Houston-Sconiers* was designed to ensure that juvenile offenders sentenced in adult criminal court are not subject to cruel and unusual punishment, first, by requiring sentencing courts to meaningfully consider the mitigating characteristics of the juvenile offender's youth and, second, by granting sentencing courts absolute discretion to depart from otherwise applicable SRA sentencing schemes. *Houston-Sconiers*, 188 Wn.2d at 9, 19-20.

On the record before us, it is clear Hinton's youth was acknowledged at sentencing. *See, e.g.*, Hr'g Proc. (HP) (Feb. 18, 2000) at 38 (State noted nature of Hinton's crimes "aggravates the mitigation that might be available due to his young age or to his background"), 56 (sentencing court noted Hinton had not had chance to "grow up" and his bad choices and judgment were "partly the result of [his] youth"). However, a cursory acknowledgement of youth is not equivalent to a substantive consideration of the mitigating qualities of youth. *See State v. Ramos*, 187 Wn.2d 420, 443, 387 P.3d 650 (2017) (consideration of youth requires more

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

than merely "recit[ing] the differences between juveniles and adults and mak[ing] conclusory statements that the offender has not shown an exceptional downward sentence is justified"). Instead, sentencing courts must consider the defendant's age and the "'hallmark features'" of their youth, "such as the juvenile's 'immaturity, impetuosity, . . . failure to appreciate risks and consequences[,] . . . the nature of the juvenile's surrounding environment and family circumstances, the extent of the juvenile's participation in the crime, and 'the way familial and peer pressures may have affected [them].'" *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 567 U.S. at 477).

Sentencing courts should also consider whether any "'incompetencies associated with youth'" might have affected proceedings. *Ramos*, 187 Wn.2d at 444 (citing juvenile's incapacity to assist attorneys or cooperate with law enforcement as potential youthful incompetencies) (quoting *Miller*, 567 U.S. at 477). In the specific context of LWOP sentences, we have held that meaningful consideration entails "receiv[ing] and consider[ing] relevant mitigation evidence bearing on the circumstances of the offense and the culpability of the offender, including both expert and lay testimony as appropriate." *Id*. at 443. Although the sentencing court is not required to make written findings of fact and conclusions of law regarding its consideration of youth, "they are always preferable to ensure that the relevant

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

considerations have been made and to facilitate appellate review." *Id*. at 444; *see*

*Houston-Sconiers*, 188 Wn.2d at 23 (no requirement of written findings).

The record of Hinton's sentencing reveals no appreciable consideration of the

factors set forth above. The State simply stated that even if Hinton's age offered any

possible mitigation, it would be nullified by other aggravating factors. HP (Feb. 18,

2000) at 38 (arguing nature of Hinton's crimes "aggravates the mitigation that might

be available due to his young age or to his background"). The sentencing court's

statements that Hinton had not had the chance to "grow up" and his "youth" was

partly to blame for his "terribly bad choices and bad judgment" were little more than

a passing nod to the fact that Hinton had not yet reached the legal age of majority.

*Id*. at 56 ("I do have to accept that you are the person that you are and that the terribly

bad choices and bad judgment that you've shown . . . are partly the result of your

youth.").

For the limited purpose of protecting juveniles' Eighth Amendment rights in

adult criminal court, sentencing courts are bound to neither standard adult sentence

ranges nor mandatory sentencing schemes under the SRA. *Houston-Sconiers*, 188

Wn.2d at 9, 21, 23. However, several of the sentencing court's comments reveal that

it did not believe it had any discretion to depart from the SRA guidelines. First, the

sentencing court informed Hinton that "the Legislature has made very clear that you

are going to be incarcerated for an extensive period of time." HP (Feb. 18, 2000) at

15

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

55. The court also stated that "[g]iven the nature of the sentences and the proof at trial and the conviction that the jury came back with, the punishment is very clear in this case," and "there . . . is no question that each of these sentences will run consecutively; [and] that each of them has . . . a 'deadly-weapon enhancement' which also runs consecutively." *Id.* These statements reflect the sentencing court's now-incorrect understanding that it had no power to depart from the SRA's mandatory terms.[7]

We cannot conclude that the sentence imposed here comports with the Eighth Amendment, where the record shows scant, if any, meaningful presentation or discussion of youth as a mitigating factor. *Domingo-Cornelio*, 196 Wn.2d at 268. This is especially true when the sentencing hearing, as here, predated *Houston-Sconiers* by several decades, before state and federal courts had more fully weighed in on substantive and procedural rules necessary to protect juveniles' Eighth Amendment rights, before arguments like Hinton's were legally viable, and before sentencing courts had any reason to believe they could disregard mandatory punishments set by the legislature. *See id.* at 267-68.

---

[7] The sentencing court's comment that "there's no room for mercy in this case," HP (Feb. 18, 2000) at 56, is open to multiple interpretations, discussed further in Section III.B, *infra*.

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

B. Hinton has shown actual and substantial prejudice

Under the existing prejudice standard applicable on collateral review, to obtain a resentencing hearing Hinton must show by a preponderance of the evidence that he was actually and substantially prejudiced by the sentencing court's failure to comply with the dual mandate of *Houston-Sconiers*. *In re Pers. Restraint of Meippen*, 193 Wn.2d 310, 316, 440 P.3d 978 (2019). This requires "show[ing] some practical effect caused by [the] claimed error," that is, that Hinton more likely than not would have received a shorter sentence but for the error. *State v. Buckman*, 190 Wn.2d 51, 61, 68, 409 P.3d 193 (2018) ("constitutional error generally does not, on its own, constitute prejudice"; there must be some "defect of substance"); *Domingo-Cornelio*, 196 Wn.2d at 268; *see also Meippen*, 193 Wn.2d at 316-17. As discussed further in Part IV, *infra*, Hinton must also establish "there are no other adequate remedies available under the circumstances." *Ali*, 196 Wn.2d at 242.

A petitioner, like Hinton, who relies on the retroactive application of a decision to show "actual and substantial prejudice is not limited to circumstances where defense counsel makes an argument that is not legally available and the sentencing judge explicitly states that they would deviate from the SRA on that basis if they could." *Domingo-Cornelio*, 196 Wn.2d at 267. Rather, in the absence of any substantive discussion of youth, we must infer from the record a willingness on the part of the sentencing court to impose an exceptional sentence based on those few

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

assertions made at Hinton's sentencing discussed in Section III.A, *supra*. Though a few of our cases are instructive, none are precisely on point because of the facts specific to Hinton's sentencing.

In *Ali*, we determined the petitioner had been actually and substantially prejudiced based on the sentencing court's decision to impose the lowest possible sentence within the standard sentence ranges and its assertion that it did so "primarily because of Ali's age." 196 Wn.2d at 244. In *Domingo-Cornelio*, like the case before us, there was no indication the sentencing court engaged in any meaningful consideration of the petitioner's youth or that it understood its absolute discretion. 196 Wn.2d at 268 (noting defense counsel did not request exceptional sentence or argue youth as mitigating factor). We determined the petitioner had established actual and substantial prejudice because the sentencing court also "imposed the lowest standard range sentence" despite the State's recommendation of a high-end sentence. *Id*. (concluding this sentence "is evidence that the judge was willing to consider mitigating factors that justify a lower sentence").

In contrast, in *Meippen*, we determined there was no actual and substantial prejudice because the sentencing court imposed a high-end sentence despite Meippen's recommendation for a low-end sentence based on his youth. 193 Wn.2d at 313, 316 (defense counsel argued Meippen did not "appreciate the nature and consequences of his actions" or "'the seriousness of the situation he involved himself

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

in'" because of his age). The sentencing court rejected Meippen's arguments regarding youth as a mitigating factor and imposed a high-end sentence because it found Meippen's "'behavior [was] cold, calculated, and it showed complete indifference towards another human being.'" *Id*. at 313. Given this finding, we determined that "[n]othing in our record suggests that the trial court would have exercised its discretion to depart from the SRA sentence enhancement guidelines." *Id*. at 317.

Unlike Ali and Domingo-Cornelio, Hinton did not receive a low-end sentence. Nor did he receive a high-end sentence like Meippen. The State urges, though, that *Meippen* is controlling because Hinton's sentencing court gave no indication that it would have exercised discretion to lower his sentence. The State's position is untenable because Hinton's sentencing court, unlike, for example, a resentencing wherein evidence of youth was presented but rejected, did not consider—and therefore could not reject—any appreciable argument or other evidence regarding Hinton's youth as a mitigating factor. *See Domingo-Cornelio*, 196 Wn.2d at 268 ("silence does not constitute reasoning"); *cf. Meippen*, 193 Wn.2d at 313, 316-17. The sentencing court simply acknowledged in a conclusory fashion that Hinton's youth had partly contributed to his life choices. Unlike Meippen, Hinton received midrange sentences even though he had committed very serious violent offenses and had a history of juvenile offenses that included other violent offenses. The

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

sentencing court largely followed the State's recommended sentences but imposed a slightly lower sentence on the attempted murder charge. The court also expressed concern that Hinton had not had a chance to mature and that there was "[n]othing but tragedy" in his case, HP (Feb. 3, 2000) at 32, but effectively proclaimed that its hands were tied because "the Legislature has made very clear that [Hinton was] going to be incarcerated for an extensive period of time." HP (Feb. 18, 2000) at 55. These facts demonstrate that the court would have been willing to depart from the SRA sentencing scheme to account for Hinton's tragic past had it believed it had the power to do so. Had the court also meaningfully considered Hinton's youthful characteristics—for example, by receiving any evidence or argument that Hinton possessed (or lacked) some of those "'hallmark features'" of youth, *Houston-Sconiers*, 188 Wn.2d at 23 (quoting *Miller*, 567 U.S. at 477)—and understood its authority to disregard the mandatory terms of the SRA, it appears more likely than not that it would have imposed a shorter sentence.[8] Accordingly, I would grant

---

[8] The statement that "there's no room for mercy" could be taken to mean that the court would, in fact, have been inclined to exercise its discretion and impose a lesser sentence were it not for the SRA's mandatory sentencing scheme. HP (Feb. 18, 2000) at 56. Of course, this statement could also indicate an unwillingness to impose a shorter sentence. At best, the court's statement was ambiguous and therefore sheds little light on its willingness to impose a lesser punishment. Regardless, this comment was made without any meaningful consideration of Hinton's youth as a mitigating factor. It is, therefore, distinguishable from the sentencing court's rejection of the potentially mitigating factors of youth in *Meippen*, 193 Wn.2d at 313, 317.

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

Hinton's PRP and remand for a resentencing hearing consistent with *Houston-Sconiers*.[9]

> C. This court should adopt a per se prejudice standard for the limited purpose of reviewing collateral challenges based on the retroactive application of *Houston-Sconiers* where the petitioner was sentenced in adult criminal court for offenses committed as a juvenile

The heightened standard of actual and substantial prejudice used in PRPs aligns with the long-recognized principle that collateral challenges are "not to operate as a substitute for a direct appeal." *In re Pers. Restraint of St. Pierre*, 118 Wn.2d 321, 328-29, 823 P.2d 492 (1992) (heightened standard justified because collateral attack generally "undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders"); *see State v. Delbosque*, 195 Wn.2d 106, 129, 456 P.3d

---

[9] Accepting, for argument's sake, that Hinton has not established actual and substantial prejudice by a preponderance of the evidence, then he has at least made a prima facie showing of prejudice sufficient to warrant a reference hearing. The record before us shows that the sentencing court felt caught between an obligation to acknowledge Hinton's personal history and an obligation to comply with a mandatory sentencing scheme. Although we cannot determine precisely what the sentencing court might have done differently had it understood its duty to meaningfully consider youth and its absolute discretion, Hinton has established sufficient facts to support his claim. *See In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013) (petitioners must establish "'the facts underlying the claim of unlawful restraint and the evidence available to support the factual allegations'" (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992)). The parties should be permitted to more fully address the likelihood of a shorter sentence at a reference hearing. *Id.* (reference hearing is proper where petition makes prima facie showing of prejudice "'but the merits of the contentions cannot be determined solely on the record'" (quoting *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983))).

21

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

806 (2020) ("a PRP does not, and is not meant to, afford the same protections as an appeal").[10]

One foundational assumption underlying this long-recognized principle is "'that the petitioner has already had an opportunity for judicial review.'" *Meippen*, 193 Wn.2d at 315 (quoting *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)). Hinton had no such opportunity. He did not have the benefit of *Houston-Sconiers* at the time of his sentencing, the arguments he raises now were not legally tenable at the time, nor did the sentencing court have any reason at the time to believe it could depart from mandatory punishments in the SRA. Given our particular concern with protecting juvenile offenders' Eighth Amendment rights, and our recognition that special protections like the dual mandate of *Houston-Sconiers* must be given retroactive effect (essentially to rectify constitutional violations in the past), it is illogical to require petitioners to meet a higher standard of prejudice simply because they were sentenced before courts had more meaningfully weighed in on the issue of juvenile rights.[11] I would, therefore, consistent with my dissent in

---

[10] Notwithstanding, this court has occasionally imposed a less stringent burden to establish prejudice on collateral review when an alleged error calls into question the reliability or the fundamental fairness of proceedings. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 843, 844, 280 P.3d 1102 (2012). For instance, in *Crace*, this court held that a PRP petitioner could establish prejudice by proving ineffective assistance of counsel, which involves a prejudice element requiring proof of a "reasonable probability" the outcome of the trial would have been different. *Id.* at 841-43.

[11] If Hinton had the benefit of the dual mandate of *Houston-Sconiers* during the time allotted for direct appeal, he would only have had to show error to justify a resentencing hearing. 188 Wn.2d at 23 (remand for resentencing required where sentencing judge failed to consider

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Carrasco*, No. 100073-1, slip op. at 17-23, support a narrow exception to the actual and substantial prejudice standard in cases where defendants were sentenced in adult criminal court for offenses they committed as juveniles, and propose adopting a per se prejudice standard for the limited purpose of reviewing collateral challenges based on the retroactive application of *Houston-Sconiers*.

It remains true that not every failure to comply *fully* with the dual mandate of *Houston-Sconiers* will necessarily result in disproportionate punishment. For instance, in *Meippen*, 193 Wn.2d at 313, 317, the sentencing court expressly rejected evidence of the defendant's youth as a mitigating factor in light of the defendant's perceived cold and calculating conduct and indifference to human life. However, unlike with Meippen, the potential mitigating characteristics of Hinton's youth were not presented and rejected, they were not meaningfully considered at all. On the record before us we have no evidence that Hinton's sentence complied with the Eighth Amendment *or* that it would (or would not) have been shorter had the court satisfied the dual mandate of *Houston-Sconiers*. The record simply provides no

---

youth or understand discretion to depart from applicable adult standard sentences). The State would then have borne the burden of proving that the error was harmless beyond a reasonable doubt. *Delbosque*, 195 Wn.2d at 129. However, because Hinton was sentenced over two decades ago, he now faces a much higher burden of proving error *and* actual and substantial prejudice. This calls into question whether *Houston-Sconiers*—which demands resentencing if judges fail to comply with the dual mandate—would truly be given full retroactive effect if courts also impose an additional hurdle (i.e., proving the likelihood of a shorter sentence) on those unfortunate defendants whose sentences became final before the bench had fully weighed in on the protections necessary to prevent violations of juveniles' Eighth Amendment rights.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

assurances that Hinton's sentencing complied with this constitutional right and that his punishment was, therefore, a reliable result. *Domingo-Cornelio*, 196 Wn.2d at 268. Such uncertainty undermines our faith in the fundamental fairness of sentencing proceedings like Hinton's. *See Houston-Sconiers*, 188 Wn.2d at 9, 21, 23 (because juveniles are particularly vulnerable and often have diminished culpability, juvenile offenders sentenced as adults must enjoy protections of the dual mandate without exception); *accord Ali*, 196 Wn.2d at 242 ("The Eighth Amendment requires *both* consideration of youthfulness *and* absolute discretion in order to avoid imposing unconstitutionally disproportionate sentences on juveniles.").

A per se prejudice rule does not unreasonably undercut the principles we have cited as justifying the heightened actual and substantial prejudice standard. *See St. Pierre*, 118 Wn.2d at 329 (collateral attack "undermines the principles of finality of litigation, degrades the prominence of trial, and sometimes deprives society of the right to punish admitted offenders"); *Meippen*, 193 Wn.2d at 315 (citing "'the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review'" (quoting *Isadore*, 151 Wn.2d at 298)). First, petitioners like Hinton would not be able to reverse their convictions, they could only potentially alter the severity of their

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

sentence[12] so that it complies with their constitutional right to be free from cruel and unusual punishment. Thus, society would not be deprived of its right to punish offenders in line with the Eighth Amendment. *See St. Pierre*, 118 Wn.2d at 329. Second, we cannot justify a heightened standard of prejudice based on the premise that Hinton, and petitioners like him, have already had a chance to meaningfully challenge the constitutionality of their sentences based on their youth because as mentioned, petitioners like Hinton have not "'already had an opportunity for judicial review.'" *Meippen*, 193 Wn.2d at 315 (quoting *Isadore*, 151 Wn.2d at 298). This limited group of petitioners was sentenced when the basis for their claim of error— a violation of the dual mandate of *Houston-Sconiers*—was not at all cognizable within the time allotted for direct review. Third, all resentencing necessarily reopens litigation to a limited extent and consumes additional court resources. However, an unconstitutional sentence cannot be allowed to stand simply because the parties and court have an interest in judicial economy and finality. *See Ali*, 196 Wn.2d at 233-34 (*Houston-Sconiers* was significant change in law that requires retroactive application).

I would, therefore, adopt a per se prejudice rule for the narrow purpose of considering PRPs based on the retroactive application of *Houston-Sconiers* in cases

---

[12] Notably, a resentencing hearing does not guarantee that a sentence will be altered. Petitioners assume the risk that they may be sentenced to the same or an even greater term of punishment when the sentencing court reconsiders their case.

25

where the petitioner committed their offense as a juvenile and was sentenced in adult criminal court. Should such a petitioner establish that their sentencing court satisfied *neither* prong of the dual mandate of *Houston-Sconiers*, they should be given a resentencing hearing because, in such cases, we would have no basis for determining whether their sentence complied with the Eighth Amendment. *Cf. Meippen*, 193 Wn.2d at 313, 316-17. Hinton has met this burden, and remand for resentencing is proper.

IV.    Hinton's petition should not be denied under RAP 16.4(d) because RCW 9.94A.730 is not an adequate remedy for a *Houston-Sconiers* violation

Now that Hinton has served over 20 years of his sentence, he is eligible to petition the ISRB for early release pursuant to RCW 9.94A.730.[13] The State argues, and the majority concludes, that this is an adequate remedy and, thus, Hinton's PRP must be dismissed. RAP 16.4(d) (collateral relief proper only "if other remedies which may be available to petitioner are inadequate under the circumstances"). However, "[t]he possibility of another remedy in the future cannot displace [a defendant]'s right to appeal his sentence on the basis that it was unlawfully imposed

---

[13] The ISRB denied Hinton's first petition for release in November 2019 because Hinton had not completed substance abuse treatment (and drugs were apparently involved in his offense), he had committed "76 Serious Infractions" in confinement, and a psychological assessment showed he had a moderate to high risk of recidivism. Suppl. Br. re *Ali & Domingo-Cornelio*, (Feb. 18, 2021), Attach. Decisions & Reasons at 1-2. Hinton has another hearing before the ISRB scheduled for July 2022. Suppl. Br. of Resp't at 7; Mot. to Suppl. R., Decl. of Couns. at 2.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

in the first instance." *Ramos*, 187 Wn.2d at 436.[14] I would hold that RCW 9.94A.730 is an inadequate remedy in all cases where a violation of the dual mandate of *Houston-Sconiers* has occurred.

RCW 9.94A.730 was enacted in response to the Supreme Court's decision in *Miller* and was designed to ensure that any juvenile sentenced to a term of life would have the opportunity to petition for parole after serving 20 years of their sentence. *See State v. Haag*, 198 Wn.2d 309, 331 n.7, 495 P.3d 241 (2021) (Stephens, J., concurring in part, dissenting in part). The statute has been held to be an adequate remedy in cases of a *Miller* violation, that is, when a sentencing court imposes a mandatory LWOP sentence on a juvenile offender without considering whether their youth warranted an exceptional downward sentence. *State v. Scott*, 190 Wn.2d 586, 588, 592, 416 P.3d 1182 (2018); *see Montgomery*, 577 U.S. at 212 ("A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them."). However, the PRP before us involves a *Houston-Sconiers* violation, that is, the sentencing court's imposition of a mandatory adult sentencing scheme under the SRA (which includes, but is not

---

[14] It is worth noting that *Ramos* concerned an appeal from a resentencing and not a collateral attack. 187 Wn.2d at 432. However, the point is valid here too, where Hinton did not have the opportunity to appeal his sentence on the basis it was unlawfully imposed in the first instance because the law did not so allow at the time of his sentencing.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

limited to LWOP) without considering youth or understanding the court's discretion to depart from the SRA's mandatory terms. We have determined that

> [RCW 9.94A.730] does not necessarily provide a remedy to a *Houston-Sconiers* violation. RCW 9.94A.730 permits a person convicted of crimes committed when they were under 18 years old to petition for early release after serving 20 years in confinement. . . . The [ISRB's] assessment at this stage is not whether the person possessed adult culpability at the time of the crimes but whether they pose a continued danger after 20 years of incarceration. In *Houston-Sconiers*, we emphasized that sentencing courts must consider the mitigating qualities of youth and have absolute discretion '*at the time of sentencing itself*, regardless of what opportunities for discretionary release may occur down the line.'

*Ali*, 196 Wn.2d at 245 (quoting *Houston-Sconiers*, 188 Wn.2d at 20). Whereas the denial of parole eligibility is at the heart of a *Miller* violation—and therefore RCW 9.94A.730 rectifies the error by making parole a possibility—the heart of a *Houston-Sconiers* violation is the court's failure to give due consideration to the juvenile offender's culpability at the time of their offense and to understand its absolute discretion to depart from mandatory punishments at the time of sentencing. *Houston-Sconiers*, 188 Wn.2d at 23; *see Ali*, 196 Wn.2d at 232 ("*Houston-Sconiers* identified a *category* of sentences that are beyond courts' authority to impose: *adult standard SRA ranges and enhancements that would be disproportionate punishment for juveniles with diminished culpability*.").

Although petitioners like Hinton enjoy a presumption of release, that release is not guaranteed but is granted at the discretion of the ISRB and its predominantly

28

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

forward looking assessment of the petitioner's risk of recidivism. *See In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 839, 502 P.3d 349 (2022) (public safety concerns are the ISRB's "highest priority" when considering a petition for parole). The majority interprets the practical effect of RCW 9.94A.730 as creating an indeterminate sentencing scheme—with a mandatory minimum term of 20 years and a maximum term equal to the determinate sentence originally imposed by the sentencing court, but it fails to note that this scheme applies only to *certain juvenile offenders*. *See* RCW 9.94A.730(1) (defendants ineligible in first instance if convicted of aggravated first degree murder or certain sex offenses).

RCW 9.94A.730 is not an adequate remedy. Hinton's early release depends on postconviction conduct and the discretion of the ISRB. Discretionary release based predominantly on an assessment of Hinton's conduct and risk of recidivism 20+ years after his offenses does not equate to a meaningful consideration of Hinton's youth as a mitigating factor at the time of his offenses and in no way could rectify a punishment that was imposed in violation of his Eighth Amendment rights. *Ali*, 196 Wn.2d at 246.

CONCLUSION

*Houston-Sconiers* is material to Hinton's case where he was sentenced in adult criminal court for offenses he committed as a juvenile, and pursuant to RCW 10.73.100(6) his PRP should be considered in its entirety. I would grant Hinton's

29

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

PRP and remand this case for resentencing in conformity with the dual mandates of *Houston-Sconiers*. I would also adopt a per se prejudice standard for the limited PRPs cases like Hinton's.

Even if we were not to adopt a per se prejudice standard, Hinton has established that the sentencing court failed to comply with either prong of the dual mandate of *Houston-Sconiers*, and the record before us shows that the sentencing court more likely than not would have imposed a lesser sentence had it actually considered youth as a mitigating factor and understood its discretion to depart from the mandatory terms of the SRA. In the alternative, Hinton has set forth sufficient facts to warrant a reference hearing to address the likelihood of a shorter sentence.

Because of the unique vulnerabilities of youth and the significance we have attributed to our decision in *Houston-Sconiers*, this court should adopt a per se prejudice standard for the limited purpose of considering collateral challenges based on the retroactive application of *Houston-Sconiers* in the limited context of defendants, like Hinton, who were sentenced in adult criminal court for offenses they committed as juveniles. This lower standard of prejudice would not unduly undermine our interest in judicial economy, finality of litigation, or the public's right to punish offenders in line with the Eighth Amendment. It would also give truly full retroactive effect to *Houston-Sconiers*.

30

*In re Personal Restraint of Hinton*, No. 98135-3
Whitener, J., dissenting

Because RCW 9.94A.730 does not rectify the heart of a *Houston-Sconiers* violation and offers a remedy based instead on the ISRB's discretion and assessment of a petitioner's postconviction conduct, it is not an adequate remedy that would justify dismissal of Hinton's petition under RAP 16.4(d).

I respectfully dissent.

_____
Whitener, J.

_____
Yu, J.

31

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Hinton* (*James*), No. 98135-3
(Gordon McCloud, J., concurring in dissent)


No. 98135-3

GORDON McCLOUD, J. (concurring in dissent)—I agree with the

dissent.  It accurately explains that *State v. Houston-Sconiers*, 188 Wn.2d 1, 391

P.3d 409 (2017), *In re Personal Restraint of Ali*, 196 Wn.2d 220, 237, 474 P.3d

507 (2020), and *In re Personal Restraint of Williams*, 200 Wn.2d 622, 632, 520

P.3d 933 (2022), remain controlling precedent in this state.  And it accurately

explains that those controlling decisions require us to apply the procedural "dual

mandates" of *Houston-Sconiers* retroactively on collateral review in cases like this,

where the "dual mandates" are so closely "tied to the substantive rule prohibiting

adult standard SRA[1] ranges and enhancements that would be disproportionate

punishment for juveniles who possess diminished capacity."  *Williams*, 200 Wn.2d

at 631.  It also clearly explains how application of those controlling decisions to

Hinton's case shows that Hinton has established error.  Finally, like the dissent, I

believe that our controlling decision in *In re Personal Restraint of Domingo-*

*Cornelio*, 196 Wn.2d 255, 474 P.3d 524 (2020), requires us to find that James

Hinton has also established prejudice.

---

[1] Sentencing Reform Act of 1981, ch. 9.94A RCW.

1

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Hinton* (*James*), No. 98135-3
(Gordon McCloud, J., concurring in dissent)

I write separately for two reasons.

First, I do not completely agree with the dissent's discussion of RAP 16.4(d). Consistent with my concurrence in *In re Personal Restraint of Carrasco*, No. 100073-1 (Wash. Mar. 9, 2023), I read *State v. Scott*, 190 Wn.2d 586, 416 P.3d 1182 (2018), as holding that RCW 9.94A.730's provision for Indeterminate Sentence Review Board review of certain lengthy sentences after 20 years *may* provide an adequate available remedy, per RAP 16.4(d), for some criminal defendants seeking relief from very lengthy sentences. For example, RCW 9.94A.730 provides an adequate available remedy that bars a defendant serving a de facto life sentence from using the personal restraint petition (PRP) procedure to obtain *Houston-Sconiers*-type relief.

In this case, however, Hinton received a 37 year sentence for a crime that he committed as a juvenile. That is not a de facto life sentence. Thus, RAP 16.4(d) does not provide him with an adequate available remedy and hence that rule does not bar his PRP.

I therefore disagree with the dissent's statement, "RCW 9.94A.730 [should be considered] an inadequate remedy in all cases where a violation of the dual mandate of *Houston-Sconiers* has occurred." Dissent at 27. I think that conflicts with our decision in *Scott*, which the parties have not asked us to overrule.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Second, I do not completely agree with the dissent's discussion of prejudice. I certainly agree with the dissent's analysis of the prejudice standard we established in *Domingo-Cornelio*, 196 Wn.2d at 268. And I agree with the dissent's conclusion that Hinton has established prejudice under that standard.

But I disagree with the dissent's additional statement that we should create "a narrow exception to the actual and substantial prejudice standard in cases where defendants were sentenced in adult criminal court for offenses they committed as juveniles," and replace it with "a per se prejudice standard for the limited purpose of reviewing collateral challenges based on the retroactive application of *Houston-Sconiers*." Dissent at 23. To be sure, the majority certainly tries to rewrite or discard large portions of our recent decisions in *Domingo-Cornelio*, *Ali*, and *Scott*. But I would not respond by jettisoning other portions.

For these reasons, I respectfully concur in the dissent.

_____
Gordon McCloud, J.

_____
González, C.J.

3